UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SUSAN WILD**, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 01-0479 (RBW) |
| **TINA S. ALSTER, M.D.**, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Currently before the Court is the Plaintiff's Motion for New Trial ("Pl.'s Mot."). The plaintiff, Susan Wild, alleged in this action that the defendant, Tina Alster, a medical doctor and employee of the defendant Washington Institute of Dermatologic Laser Surgery, committed malpractice during and after performing laser surgery on the plaintiff's face. The trial of this matter commenced on September 7, 2004, and the jury rendered a verdict in favor of the defendants on September 15, 2004. The plaintiff now seeks a new trial, alleging an error in the Court's jury instructions and prejudice resulting from the Court's discovery and evidentiary rulings. Pl.'s Mot. at 1-2. For the reasons stated herein, the Plaintiff's Motion for a New Trial is denied.

**I. Background**

The plaintiff requests that this Court order a new trial on two grounds: (1) that submitting to the jury Standardized Civil Jury Instruction for the District of Columbia, § 9.06 (rev. ed. 2003), entitled "Bad Result," confused the jury because the instruction purportedly indicated that the plaintiff's expert was not entitled to rely on the plaintiff's unsuccessful result in forming his

opinion that negligence occurred in this case; and (2) that the plaintiff was prejudiced by the Court's denial of her requests to have a handwriting expert testify at trial and to have the hard drive of the defendants' computer examined by an expert to explore whether it contained photographs of the plaintiff with dates indicating when the photographs were taken. Pl.'s Mot. ¶¶ 1-2. With regard to her second argument, the plaintiff contends that without these experts she was unable to establish that the medical chart and photographs used by the defendants to assert a "self-excoriation" defense had been altered. Id.[1]

## II.  Analysis

### A. Standard of Review

Under Rule 59 of the Federal Rules of Civil Procedure "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]" Warren v. Thompson, 224 F.R.D. 236, 239 (D.D.C. 2004) (citing Fed. R. Civ. P. 59(a)). This Court has specifically found that "[a] new trial should be granted 'only where the court is convinced the jury verdict was a seriously erroneous result and where denial of the motion will result in a clear miscarriage of justice.'" Lloyd v. Ashcroft, 208 F. Supp. 2d 8, 13 (D.D.C. 2002) (quoting Nyman v. FDIC, 967 F. Supp. 1562, 1569 (D.D.C.

---

[1]The plaintiff also requests that this Court enter a default judgment in her favor because the defendants did not produce photographs that contained the actual dates when they were taken. Pl.'s Mot. ¶¶ 1-2. This request again advances the arguments the plaintiff raised in her previous Motion for Default Judgment on Liability, or Other Relief [D.E. # 81], filed on September 4, 2004, three days before jury selection commenced. Memorandum of Points and Authorities in Support of Plaintiff's Motion for New Trial ("Pl.'s Mem.") at 11. Because the Court already considered and denied the plaintiff's motion for a default judgment on September 7, 2004, it will not be considered again.

1997) (internal citations omitted)).  Therefore, to be entitled to relief, motions for a new trial "must clearly establish either a manifest error of law or fact or must present newly discovered evidence."  Nyman, 967 F. Supp. at 1569 (quoting FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986) (internal citations omitted)).  However, "[motions for new trial] cannot be used to raise arguments which could, and should, have been made before the judgment [was] issued."  Id.  In addition, when deciding whether to grant a new trial, "the court should be mindful of the jury's special function in our legal system and hesitate to disturb its finding."  Id. (citations omitted).  "Accordingly, 'the standard for granting a new trial is not whether minor evidentiary errors were made in the course of a long trial, but rather whether there was a clear miscarriage of justice.'"  Warren, 224 F.R.D. at 239 (citation omitted).  Additionally, "[t]he decision whether to grant a motion for a new trial is ordinarily 'entrusted to the sound discretion of the trial court.'"  McNeal v. Hi-Lo Powered Scaffolding, Inc., 836 F.2d 637, 646 (D.C. Cir. 1988) (citation omitted).

### B. The "Bad Result" Jury Instruction

The plaintiff's first argument in support of her motion for a new trial is that giving the "Bad Result" instruction, Standardized Civil Jury Instruction for the District of Columbia, § 9.06 (rev. ed. 2003) (also referred to as the "mere happenings" instruction), was confusing and misled jurors as to District of Columbia law.  Pl.'s Mem. at 1.  The portion of the instruction at issue reads as follows:  "A doctor is not negligent simply because her efforts are not successful.  Unsatisfactory results from treatment or care alone do not determine whether Dr. Alster was negligent in treating Ms. Wild."  Standardized Civil Jury Instruction, § 9.06 (emphasis added).  Rather than instructing the jury as the Court did, the plaintiff had requested the following

3

instruction: "An unsuccessful result may be considered as some evidence of negligence, and an expert witness may consider it in formulating the opinion that the defendants failed to treat the plaintiff with the same degree of skill, care, and knowledge required of a doctor acting in the same or similar circumstances." Pl.'s Mem. at 3.

The plaintiff argues that a plain reading of the instruction given by the Court indicated to jurors that the "mere happenings" of an unsuccessful result <u>may not</u> be considered as evidence of a breach of the standard of care. Id. at 2-3 (emphasis added). The plaintiff then asserts that "there is nothing in the rest of the jury instructions to clarify for jurors that experts may rely on the unsuccessful result as evidence of a breach in the standard of care." Id. at 2. The plaintiff contends that "what the instruction fails to mention is that expert witnesses may infer negligence from unsatisfactory results." Id. at 3. The plaintiff argues that the effect of this instruction was to confuse jurors and diminish the power of plaintiff's expert testimony. Id.

Under District of Columbia law, "[a] trial court has broad discretion in fashioning appropriate jury instructions, and its refusal to grant a request for a particular instruction is not a ground for reversal if the court's charge, considered as a whole, fairly and accurately states the applicable law." <u>Nelson v. McCreary</u>, 694 A.2d 897, 901 (D.C. 1997) (quoting <u>Psychiatric Inst. of Wash. v. Allen</u>, 509 A.2d 619, 625 (D.C. 1986) (citations omitted)). "[A]s long a district judge's instructions are legally correct . . . []he is not required to give them in any particular language." <u>Rogers v. Ingersoll-Rand Co.</u>, 971 F. Supp. 4, 11 (D.D.C. 1997) (applying D.C. law) (quoting <u>Miller v. Poretsky</u>, 595 F.2d 780, 788 (D.C. Cir. 1978)). Thus, a court's "refusal to grant an instruction is not ground for [a new trial] when the charge as given, although in a more

4

general form, fully informs the jury as to the law." George Washington Univ. v. Waas, 648 A.2d 178, 183 (D.C. 1994) (quoting Evans v. Capital Transit Co., 39 A.2d 869, 871 (D.C. 1944)); see also Hawthorne v. Canavan, 756 A.2d 397, 402 (D.C. 2000) (holding the "instructions as a whole were fair and accurate, and the judge did not abuse his discretion by refusing to give the specific instruction requested by the plaintiff"). Accordingly, consistent with District of Columbia law, the Circuit Court has noted that "jury instructions are not considered erroneous if, when viewed as a whole, 'they fairly present the applicable legal principles and standards.'" Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 556 (D.C. Cir. 1993) (quoting EEOC v. Atlantic Cmty. Sch. Dist., 879 F.2d 434, 436 (8th Cir.1989)).

The plaintiff cites several cases, including Kennelly v. Burgess, 654 A.2d 1335 (Md. 1995), in support of her proposition that a "mere happenings" instruction is confusing and misstates the law. Pl.'s Mem. at 2, 4-6. The Maryland Court of Appeals found that the "mere happenings" jury instruction given in Kennelly, also a medical malpractice case, was grounds for reversal because it misstated Maryland law. Kennelly, 654 A.2d 1341-42. The Kennelly Court also cautioned against giving the instruction because it was redundant and may have potentially confused the jurors. Id. However, as the Court addresses below, the language of the instructions in Kennelly and the other cases cited by the plaintiff are distinguishable from the language in the instruction here. Consequently, no confusion or misstatement of the law resulted from the "mere happening" instruction given in this case.

The first important distinction between Kennelly and this case is that the instructions in Kennelly misstated the law, id. at 1340, whereas the instructions here are a fair and accurate

5

statement of the law in the District of Columbia.  Under District of Columbia law, in a medical malpractice case "[t]he mere happening of an accident does not constitute proof of negligence." King v. Pagliaro Bros. Stone Co., 703 A.2d 1232, 1234 (D.C. 1997) (citations omitted); see also Sweeney v. Erving, 35 App. D.C. 57 (D.C. Cir. 1910) ("Generally speaking, no inference of negligence can be drawn from the result of the treatment of a physician or surgeon").  The language of the "mere happenings" instruction at issue here simply relates that under District of Columbia law the mere happening of a bad result alone will not constitute negligence in a medical malpractice case.  See King, 703 A.2d at 1234; Sweeney, 35 App. D.C. 57.  The reasoning behind this instruction is that "physicians are not expected to be perfect and 'do not and cannot guarantee results;' they are liable in negligence only when their behavior falls below that which would be undertaken by a reasonably prudent physician . . . ."  Burke v. Scaggs, 867 A.2d 213, 217 (D.C. 2005) (quoting Meek v. Shepard, 484 A.2d 579, 581(D.C. 1984)).  Unlike the situation in Kennelly, the Court's instruction here was legally correct, and the Court was not bound to give the plaintiff's requested instruction.  See Rogers, 971 F. Supp. at 11 ("[a]s long a district judge's instructions are legally correct . . . []he is not required to give them in any particular language").

    Moreover, no confusion resulted here because the substance and language of the instruction at issue also differs from the Kennelly instruction.  In Kennelly, the instruction read: "an unsuccessful result following medical treatment is not evidence of negligence."  Kennelly, 654 A.2d at 1336 (emphasis added).  The court found that the problem with the instruction was that it "implied that the jury should give no consideration at all to the unsuccessful medical

treatment of petitioner." Id. at 1341 (emphasis added).  Here, the instruction stated, "[a] doctor is not negligent simply because her efforts are not successful.  Unsatisfactory results from treatment or care alone do not determine whether Dr. Alster was negligent in treating Ms. Wild." Standardized Civil Jury Instruction, § 9.06 (emphasis added).  The inclusion of the words "simply" and "alone" distinguish the instruction given here from the instruction given in Kennelly.  Contrary to the plaintiff's position, a plain reading of the instruction given in this case did not indicate to the jurors that "no consideration" whatsoever could be given to the unsuccessful result.  Instead, the instruction, when "viewed as a whole," see Joy, 999 F.2d at 556, indicated to the jurors that the unsuccessful result could be considered by the jury but that something more was necessary to merit a finding of negligence.  Specifically, the jurors were instructed that they had to find that "the doctor's performance fell below the standard of care." Standardized Civil Jury Instruction, § 9.06; see also Burke, 867 A.2d at 217.

      The plaintiff also cites Green v. Castronova, 223 N.E.2d 641 (Ohio Ct. App. 1966) in support of her position that the "mere happenings" instruction this Court gave was confusing and misstated the applicable law.  The instruction in Green was deemed problematic, however, because it was similar to what the jury was told in Kennelly.  See id. at 645.  The "mere happenings" instruction in Green read: "the mere fact that an accident happened or that plaintiff received some injury is no evidence whatsoever that the defendant was negligent and no negligence may be inferred therefrom." Id. (emphasis added).  The Green Court held that this was a misstatement of the law.  Id.  Notably, the court's dicta following its holding actually supports the use of language like that used in the instruction here.  In that regard, the Green Court

7

stated, "the reason that [the instruction] is incorrect is [because of] the use of the words 'no evidence.'" And that, "[i]f the words 'insufficient evidence' were substituted for the words 'no evidence' the statement would be [a] correct statement of the law." Id. at 648.  Like using the words "insufficient evidence," as suggested by the Green Court, the words "simply" and "alone" served to clarify the instruction at issue here and made it a proper statement of the law.

The plaintiff also cites Gagosian v. Burdick's Television & Appliances, 62 Cal. Rptr. 70 (Cal. Ct. App. 1967), in her effort to persuade the Court that its "mere happenings" instruction is both redundant and confusing.  Pl.'s Mem. at 6-7.  In Gagosian, however, the court found that the undisputed fact that the plaintiff's car was rear-ended while stopped at a stop sign warranted a res ipsa loquitur instruction.  Id. at 72.  While the plaintiff failed to request the res ipsa instruction, consequently waiving it, the court held that where undisputed facts warrant an unconditional instruction on res ipsa, "it is error to instruct the jury that the mere occurrence of the accident gives rise to no inference of negligence . . . ." Id. (emphasis added).  Unlike Gagosian, this is not a case of res ipsa.  See Bunn v. Urban Shelters and Health Care Sys., Inc., 672 A.2d 1056, 1060 (D.C. 1996) (citations omitted) (plaintiff must demonstrate, inter alia, that "an event would not ordinarily occur in the absence of negligence . . ." before res ipsa loquitur can be held to apply). The District of Columbia Court of Appeals has consistently held that in a medical malpractice case of this type, there is a likelihood of infections and complications which may follow surgery, even when all due care is exercised by the physician, making the doctrine of res ipsa inapplicable in this case.  See Talley v. Varma, 689 A.2d 547, 552-53 (D.C. 1997).  Additionally, the court in Gagosian gave a "no inference of negligence" instruction similar to the instructions

8

given in Kennelly and Green. Gagosian, 62 Cal. Rptr. at 72. As previously discussed, a "no inference of negligence" instruction differs in substance from the instruction given here.

The Gagosian Court, in dictum, stated that "mere happenings" instructions "elucidate[] the obvious" and urged other trial judges to "strike[] the 'mere happening' instruction from his instruction book and completely erase[] it from his memory . . . ." Gagosian, 62 Cal. Rptr. at 73. However, adherence to this recommendation is not prudent advice in this jurisdiction. As noted already, in a medical malpractice case such as the one at hand, the District of Columbia Court of Appeals has emphasized that the law in the District of Columbia does not allow juries to draw an inference of negligence from an unsuccessful result alone. See Talley, 689 A.2d at 552-53. This is because "[d]ue to the great variety of infections and complications which, despite all precautions and skills, sometimes follow accepted and standard medical treatment, courts reject the notion that because [injury] follows a treatment[,] an inference of negligence is to be made." Id. (quoting Quick v. Thurston, 290 F.2d 360, 363-64 (D.C. Cir. 1961) (citations omitted)). Consequently, the "mere happenings" instruction given here accurately elucidate the law in the District of Columbia in a clear and purposeful manner. Because the instruction, when "considered as a whole, fairly and accurately state[d] the applicable law," it was not erroneous, and the Court properly exercised its discretion in choosing the language it submitted to the jury. See Nelson, 694 A.2d at 901 (citation omitted). Accordingly, because the instruction was both a clear and a correct statement of the law in the District of Columbia, there was no manifest error of law committed and no "miscarriage of justice" will occur by letting the jury verdict stand. See Lloyd, 208 F. Supp. 2d at 13; Nyman, 967 F. Supp. at 1569.

### C. The Prejudice Alleged by the Plaintiff

In addition to her argument alleging the erroneous jury instruction, the plaintiff argues that she was prejudiced by the Court's denial of her request to have a handwriting expert testify at trial and to have the hard drive of the defendants' computer examined by an expert. Pl.'s Mot. ¶¶ 1-2. The plaintiff contends that without these experts she was unable to establish that the medical chart and photographs used by the defendants to assert the "self-excoriation" defense had been altered. Id.

The plaintiff made a request to the Court for the first time on August 16, 2004, to have the plaintiff's medical chart reviewed by a handwriting expert. Defendants' Opposition to Plaintiff's Motion for New Trial ("Defs.' Opp'n") at 7. The plaintiff had sought to use the testimony of a handwriting expert to bolster the testimony of Patricia Romero, a former nurse in the defendants' office. Pl.'s Mem. at 8. Although Romero had never provided treatment services to the plaintiff, she was expected to testify for the plaintiff and say that Dr. Alster had altered the plaintiff's medical chart for the purpose of covering up her alleged malpractice. Pl.'s Mem. at 8-11. Specifically, the plaintiff asserted that Dr. Alster altered the chart to corroborate her "self-excoriation" defense. Id. However, both at her deposition and at trial, Romero never testified that she actually saw the chart being altered, but merely stated that she saw the Dr. Alster "writing furiously" in the plaintiff's medical chart. Id. at 10; Defs.' Opp'n at 7-8. And the Court granted the plaintiff's August 16 request to have the chart examined by her handwriting expert. Id. at 8. However, on August 27, 2004, the plaintiff indicated that her expert was still reviewing the chart. Id. Consequently, the Court denied the plaintiff's eve-of-trial request to

call her handwriting expert as a witness at trial.  Id.

The Court ultimately denied the plaintiff's August 16, 2004 request because it would have inevitably resulted in another continuation of the trial.  This would have occurred because even if the plaintiff's expert could have completed his examination of the chart and produced an expert report immediately after the August 27, 2004 hearing, the defendants surely would have wanted their expert to examine the chart to counter any findings made by the plaintiff's expert.  Significant to the Court's decision to reject the plaintiff's request was the fact that it was made only three weeks before jury selection was scheduled to commence and nearly a year and a half after the close of the discovery period.  And the Court was under no obligation to grant another untimely discovery request, especially given the potential for yet another continuation of the trial.  See Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983, 992 (D.C. Cir. 1998) (upholding the district court's denial of motion to compel as untimely); Public Loan Co. v. FDIC, 803 F.2d 82, 87 (3d Cir. 1986) ("[D]istrict court was [] well within its discretion in limiting appellants' untimely discovery requests").

Despite the lack of any evidence of actual alteration of the chart and the lateness of the request to have the chart examined by a handwriting expert, the Court expressly invited the plaintiff to make a proffer on the record at trial as to what her handwriting expert would have said had he been allowed to testify.  Defs.' Opp'n. at 8.  However, no such proffer was ever made by the plaintiff.  Id.  The plaintiff now explains in her reply that the anticipated testimony of her original expert was not proffered because the expert informed her attorney that he did not have the expertise to state when the entries were written on the original chart.  Pl.'s Reply at 6.  The

plaintiff should have made the proffer when given the opportunity to do so and afforded the Court the opportunity to determine whether the testimony should be permitted.  Without such a proffer, the Court was left only to speculate as to what the plaintiff's expert may have testified to at trial.  Therefore, the Court cannot now be faulted for denying plaintiff's request to have the unidentified expert testify at trial.

The plaintiff also argues that she needed "an expert to examine Dr. Alster's computer hard drive to determine what if any information [was] contained therein regarding the photographs at issue in this case."  Pl.'s Mem. at 10.  Specifically, the plaintiff sought to determine whether the dates on which photographs of the plaintiff's face were taken by Dr. Alster's office could be retrieved from the computer's hard drive.  Id.  And, the plaintiff asserts that the defendants' computer consultant, Michael Stokes, testified that this information was retrievable.  Id. at 11.  Namely, the plaintiff contends that Stokes testified during his deposition that the photographs of the plaintiff could be printed "as of the present time with the dates they were taken."  Id.  However, the Stokes deposition testimony referenced by the plaintiff actually indicates that it was impossible to print any of the photographs with dates indicating when they were originally taken.  What he actually said was the following:

> Q. Okay.  So to your knowledge today can these photographs of Susan Wild be printed as of today with the date they were originally taken?
> A. Yes, sir.
> Q. Okay.
> A. Taken or imported into the system, whichever it has.
> Q. But there is a difference; right, or not?
> A. It is different.  With Mirror Image two as I was saying it has this feature didn't know existed where it can tell you if the photo was imported or captured.  And I can go and retrieve that and print it out.
> Q. Now that's the import date?

> A. Yes.
> Q. But is there any way to print today anything that would show when the photographs were taken?
> A. Put into the system is all I can respond to.
> Q. Not necessarily taken?
> A. If it was taken with a camera it will say that. If it was physically inserted it will say that too.
> Q. What do you mean physically inserted?
> A. Meaning if it was imported on CD and imported into the system it would say this file was - this photo was imported on such and such date. Or if the person was sitting in front of the camera and the photo was taken it will say captured by camera and such date.

Pl.'s Reply at 8-9 (citing Stokes Dep. at 66-67). Stokes' testimony seems to indicate that if a photograph was imported into the computer system through the use of a camera, the date the image was captured would be reflected on that photograph. On the other hand, if the photograph was imported into the computer system by some other means, such as through the use of a C.D., the date reflected on the photograph would be the date of the importation, not the date when the photograph was taken.

If there was any doubt as to whether only the import date was available for the photographs of the plaintiff that could be retrieved from the defendants' computer hard drive, Stokes' testimony at trial clarified this issue. Stokes' trial testimony confirms that for the eleven photographs that were recovered, only the August 2001 import date was available:

> Q. And is there any other date, other than this August, 2001, date, for any of those 11 pictures that you located?
> A. No.
> Q. Can you tell by any source in the system now when any of the those pictures were first – like when they were actually taken of the patient?
> A. Not of those 11. I Cannot.

Trial Transcript, Excerpt of Michael Stokes' testimony, Sept. 13, 2004 ("Trial Tr.") at 10.

Stokes further testified that the August 2001 date, the only date that was now available, was in

13

fact the date when the recovered photos were imported back into the computer system. Id. at 11.

It appears that all the photographs of Susan Wild, as well as many other patients, were lost during a conversion from the computer system in use when the photographs were taken to a new system. Id. 5-6. As Stokes testified, Dr. Alster's office took several steps to attempt to recover these photographs, including examining backup tapes from the computer system, and ultimately sending those tapes to a data recovery service when they proved unreadable. Id. at 6. The data recovery service was able to recover some data, which was placed onto CDs. Id. 7-8. When these CDs were loaded into the computer system in August 2001, however, the only dates displayed on these photos were the import dates, and not the dates when the photographs were originally taken. Id. at 10-11. The plaintiff sought to present evidence at trial that Dr. Alster altered photographs of the plaintiff after she discovered that the plaintiff was suing her for malpractice. Pl.'s Mem. at 10. While the original dates when the photographs were taken might have assisted the plaintiff in establishing this claim, import dates would not, since they would only show the date the recovered data was imported back onto the computer system, not when the photographs were taken or when any alleged alternations were made. Id. Accordingly, the plaintiff has not demonstrated that she actually suffered any prejudice, because being able to present evidence of the import dates of the photographs to the jury would have provided no support for the plaintiff's alteration claim.

In any event, even if the desired information could have been recovered from the defendants' computer system, the Court was well within its discretion to disallow the additional discovery, which was requested well after the discovery period closed. See Material Supply Int'l,

Inc., 146 F.3d at 992; Public Loan Co., 803 F.2d at 87.  The plaintiff's request to have the hard drive of the defendants' computer searched was not made until August 2004, over a year and a half after the close of discovery.  And granting this untimely request was properly denied, see id., as granting it would have inevitably resulted in yet another postponement of the trial.  Hearing Transcript of Aug. 16, 2004 proceedings at 16-18, 22.

### III.  Conclusion

The Court concludes that the "mere happenings" jury instruction given here was a fair and accurate statement of the law in the District of Columbia.  Therefore, no confusion or miscarriage of justice resulted from giving the "mere happenings" instruction in this case.  Moreover, the jury's verdict was consistent with the weight of the evidence.  Additionally, because the plaintiff never identified a handwriting expert and did not disclose what, if anything, this unnamed expert would have said, even though the Court invited the plaintiff to make such a proffer, it is difficult for the Court to assess what, if any, prejudice the plaintiff sustained from not having the opportunity to present expert handwriting testimony.  And, if there was any prejudice, which is doubtful, it was rectified by the jury's opportunity to weigh both the credibility of Romero's testimony and that of Dr. Alter's on the issue of whether the photographs and the plaintiff's chart had been altered.  Therefore, the Court is not convinced that the jury's verdict was "seriously erroneous," see Lloyd, 208 F. Supp. 2d at 13 (citations omitted), and, "be[ing] mindful of the jury's special function in our legal system . . . ," the Court will not disturb its verdict.  Nyman, 967 F. Supp. at 1569 (citations omitted).  For these reasons, the

Plaintiff's Motion for a New Trial is denied.[2]

**SO ORDERED** on this 20th day of July, 2005

REGGIE B. WALTON<br>United States District Judge

---

[2] An Order consistent with this Memorandum Opinion is being issued contemporaneously herewith.